**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ROAD SPRINKLER FITTERS LOCAL
UNION NO. 669, U.A., AFL-CIO,

  Plaintiff,

v.              Case No. 12-13983
                 Hon. Lawrence P. Zatkoff

TRISTAR FIRE PROTECTION, INC.,
and TSFP HOLDINGS, INC.,

  Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on February 24, 2014

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on the following motions:

(1) motion from Defendant TriStar Fire Protection, Inc. for summary judgment [dkt 20];
(2) motion from Defendant TSFP Holdings, Inc. for summary judgment [dkt 21];
(3) Plaintiff Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO's motion for summary judgment [dkt 22]; and
(4) motion from Defendant TSFP Holdings, Inc. for leave to file a supplement to its motion for summary judgment [dkt 28].[1]

Defendant TriStar Fire Protection, Inc., neither responded to the motion for summary judgment filed by Plaintiff Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO, nor replied to the response filed by Plaintiff Road Sprinkler Fitters Local Union No. 669, U.A., AFL-

---

[1] The supplement seeks to include in the record a case Defendant TSFP Holdings, Inc., asserts is relevant to the instant matter.  Plaintiff Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO asserts the case is materially different and not binding.  The Court will consider the case in determining the outcome of the instant matter.  As such, the Court GRANTS Defendant TSFP Holdings, Inc.'s motion for leave to supplement its summary judgment motion.

CIO. Defendant TSFP Holdings, Inc., responded and replied to all motions and responses filed by Plaintiff Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO. Plaintiff Road Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO responded to each Defendant's motion for summary judgment and replied to the response from Defendant TSFP Holdings, Inc. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted, without oral argument. For the following reasons, all motions for summary judgment are DENIED.

## II. BACKGROUND

Plaintiff Road Sprinkler Fitters Local Union No. 699, U.A., AFL-CIO ("Plaintiff") is a national labor organization that represents skilled construction employees engaged in the installation and repair of automatic fire protection systems across the country. Defendant TriStar Fire Protection, Inc. ("TriStar") was formed in 1978 and was involved in the installation and maintenance of fire protection and fire suppression systems until declaring bankruptcy in 2011. Defendant TSFP Holdings, Inc., ("TSFP")—co-owned by two former officers of TriStar—was incorporated in September of 2011, acquired all of TriStar's assets in 2012, and is currently in the business of installing and maintaining fire protection and fire suppression systems.

The instant summary judgment motions before the Court present two central issues:

1. Whether TriStar's bankruptcy precludes Plaintiff from alleging TSFP is the "alter ego" of TriStar; and
2. If TriStar's bankruptcy does not bar Plaintiff from asserting such a claim, whether TSFP is the "alter ego" of TriStar, and thus bound to comply with the collective bargaining agreement initially entered into between Plaintiff and TriStar.

A. FACTUAL BACKGROUND

Plaintiff and TriStar were parties to Plaintiff's national collective bargaining agreement (the "CBA") between Plaintiff and the National Fire Sprinkler Association, Inc., with a term from April 1, 2010, until March 31, 2013.[2] The terms and conditions of employment for TriStar's sprinkler fitter employees were set forth in the CBA, requiring TriStar to utilize Plaintiff's hiring halls when it needed to hire sprinkler fitter employees. Article 25 of the CBA contains a broad grievance and arbitration clause inclusive of "all disputes and grievances relating to interpretation and enforcement of [the CBA] . . . ." The CBA also seeks to prohibit any signatory from attempting to "use any sale, transfer, lease, assignment or bankruptcy to evade the terms of" the CBA.

On August 18, 2011, TriStar filed a petition for Chapter 11 bankruptcy protection in the U.S. Bankruptcy Court for the Eastern District of Michigan. TriStar claims the petition was filed for three reasons: the serious decline in TriStar's gross revenue, the fact that TriStar was in default on a $900,000.00 loan it had received from Bank of America, and a labor dispute between TriStar and a different local sprinkler fitters union. Plaintiff asserts, however, that the motivating factor behind the filing was to avoid what TriStar saw as an "uncompetitive labor contract" between Plaintiff and TriStar.

Prior to filing for bankruptcy, TriStar was owned by a group of investors under the name TriStar Acquisition Company. TriStar's President at the time was Scott Penive and its Vice President of Engineering was Michael Shaver. TriStar's Vice President of Operations was Bruce Hermanson ("Hermanson") and TriStar's Chief Financial Officer was Eric Wieber ("Wieber").

---

[2] The National Fire Sprinkler Association is a national trade association that represents contractors in the fire protection industry. The terms and conditions of employment for TriStar's sprinkler fitter employees were set forth in the collective bargaining agreement between Plaintiff and the National Fire Sprinkler Association. TriStar was a member of the National Fire Sprinkler Association.

3

On October 1, 2011, Scott Penive and Michael Shaver resigned from TriStar, while Wieber and Hermanson stayed on as officials of TriStar. They also co-founded a company—TSFP—in September of 2011 to possibly make a bid to purchase TriStar's assets through the bankruptcy proceeding. They formed TSFP as 50% owners; currently Hermanson is the President of TSFP and Wieber is TSFP's Chief Financial Officer.

On October 11, 2011, TriStar filed a Plan of Reorganization ("Plan") and Disclosure Statement with the Bankruptcy Court. As part of the Plan, TSFP was designated as the Stalking Horse Bidder in an auction sale for TriStar's assets. TSFP was chosen as the Stalking Horse Bidder—according to TriStar's Disclosure Statement—due to the experience Wieber and Hermanson had in the business and their likelihood to maximize the value of TriStar's assets. According to the Plan, any entity which wanted to participate in the auction sale of TriStar's assets was required to become a "qualified bidder" by providing a deposit of at least $25,000.00, demonstrating that it possessed the capabilities to operate the business, and submitting a bid. Ultimately, no other entities besides TSFP attempted to meet the requirements set forth in the Plan to become a qualified bidder.

Although several objections to the Plan—including one from Plaintiff—were filed, the Bankruptcy Court confirmed the Plan on May 16, 2012 (the "Confirmation Order"). The Confirmation Order indicated that "[a]ll . . . Objections have been resolved and are being voluntarily withdrawn, and all objecting parties consent to confirmation of the Plan and entry of this Order." The Confirmation Order also stated "[t]he sale contemplated by the Plan, free and clear of any Claims, Liens, encumbrances, Interests and rights of any nature, is approved under §§ 363 and 105 of the Bankruptcy Code. Where inconsistent, this Confirmation Order supersedes the Plan."

4

The Confirmation Order specifically addressed Plaintiff's Objections to the Plan, and stated:

> The objections of . . . [Plaintiff] . . . are hereby resolved as follows: Notwithstanding anything to the contrary in Section 4.1 of the Plan or the Asset Purchase Agreement, the sale of assets under Section 363 and 105 of the Bankruptcy Code shall not be deemed to preclude . . . [Plaintiff] from asserting that [TSFP] or any other person or entity is a successor of the Debtor for the purpose of determining whether [TSFP] must recognize . . . [Plaintiff] for bargaining purposes.
>
> Except as provided above, the Bankruptcy Court is making no ruling or finding as to whether applicable law precludes . . . [Plaintiff] from asserting, and they reserve the right to assert, any claims, rights or interests against [TSFP] or any other person or entity as a successor to the Debtor, however, to the maximum extent provided by law, [TSFP] or any other person or entity reserve the right to assert the assets are purchased under this order free and clear of any claims, rights or interests in such assets under the Plan.

On June 8, 2012, prior to sale of any assets, TriStar filed a motion with the Bankruptcy Court to assume the CBA with Plaintiff. In this motion, TriStar indicated its intent not to reject the CBA. TriStar also indicated, however, that it did not intend to assign the CBA to the purchaser of Debtor's assets: TSFP. Plaintiff did not file an objection to this motion. As indicated by TriStar's motion, TSFP has not currently adopted the CBA. New employees are instead hired directly by TSFP rather than via any hiring hall. The terms and conditions of employment for TSFP employees are set forth in an employee handbook, and the wages and benefits of TSFP employees are different from those previously received by TriStar employees.

On June 11, 2012, an Asset Purchase Agreement (the "Agreement") was executed between TriStar and TSFP. Under the terms of an Installment Payment and Security Agreement contained within the overarching Agreement, TSFP purchased TriStar's assets with a $25,000.00 deposit and a $4.1 million loan from TriStar. TriStar retained a security interest in the assets as collateral for its loan. The assets purchased by TSFP included all of TriStar's equipment,

machinery, tooling supplies, intellectual property, TriStar's rights under any and all contracts, all inventory, customer lists and receivables. TSFP also purchased TriStar's business name and business telephones.[3]

The Agreement also indicates TriStar's owners have the right to approve TSFP's annual budget, the right to approve salaries or other compensation in excess of the approved annual budget, the right to approve or reject organizational changes made by TSFP, and the right to approve or reject any substantial change in the nature of the business of TSFP. TriStar ownership also retains the right to inspect the TSFP premises, to attain any additional information about TSFP it might request, and the right to communicate directly with TSFP customers in the event of default. TSFP asserts that no owner of TriStar has any control over TSFP's operations, indicating Wieber and Hermanson make all of TSFP's management and business decisions.[4]

As of June 11, 2012, TSFP has operated a sprinkler fitters business. TSFP does business under the name "TriStar Fire Protection" (the same full name as Defendant TriStar) at the business offices previously occupied by TriStar. TSFP uses the same telephones, furniture, equipment, tools and materials formerly owned by TriStar. Plaintiff alleges 24 of the 25 employees TSFP currently has were also employed by TriStar. Plaintiff also asserts at least 60 of the 62 customers TSFP disclosed during discovery were former customers of TriStar.

B. PROCEDURAL BACKGROUND

---

[3] Because TSFP purchased the name "TriStar Fire Protection" from TriStar in the Agreement in order to operate as "TSFP Holdings, Inc., d/b/a TriStar Fire Protection, Inc.", TriStar changed its name to "OC Sprinklers, Inc." OC Sprinklers is permitted to use the TriStar name for purposes of collecting the amounts owed it by TSFP under the terms of the Agreement, the Installment Payment and the Security Agreement.
[4] Notably, Wieber signed the Agreement on behalf of TriStar and Hermanson signed the Agreement on behalf of TSFP. That same day, Wieber and Hermanson were officially terminated by TriStar and TSFP began its operations.

On July 16, 2012, Plaintiff filed a grievance against TSFP, alleging that TSFP was bound by the terms of the CBA entered into between Plaintiff and TriStar. Plaintiff asserted TSFP was attempting to evade the terms of the CBA, and sought restoration of the terms and conditions contained within the CBA. There is no record of responses from either TriStar or TSFP to Plaintiff's grievance filing.

On September 10, 2012, Plaintiff filed its complaint with this Court, seeking an order that TSFP is the "alter ego" of TriStar and asking the Court to compel TSFP to comply with the terms of the CBA by submitting Plaintiff's grievance to final and binding arbitration.

### III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

Once the moving party has met its burden of production, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

Plaintiff alleges that:

1. TSFP is the "alter ego" of TriStar;
2. The CBA initially entered into by Plaintiff and TriStar must therefore also apply to TriStar; and
3. TriStar must thus comply with the CBA's arbitration clause.

TriStar and TSFP assert in separate filings that TriStar's bankruptcy proceedings bar Plaintiff from arguing TSFP is the "alter ego" of TriStar. Additionally, both Defendants assert that TSFP is not the "alter ego" of TriStar.

As is established below, the Court finds that TriStar's bankruptcy proceeding do not bar Plaintiff from now asserting TSFP is the "alter ego" of TriStar. The Court also finds that, in considering the evidence and arguments submitted by all parties concerning TSFP's "alter ego" status, genuine issues of material fact exist as to whether TSFP is indeed the "alter ego" of TriStar. Because genuine issues of material fact exist, the question of TSFP's "alter ego" status must proceed to trial.[5]

A. TRISTAR'S BANKRUPTCY DOES NOT BAR PLAINTIFF FROM BRINGING AN "ALTER EGO" CLAIM

---

[5] No party has addressed whether TSFP, if found to be the "alter ego" of TriStar, is bound to arbitrate the parties' current dispute. As this appears to be a potentially divisive issue between the parties in the future, the Court feels it necessary to briefly state that this scenario was not presented for the Court's consideration.

8

Section 1113 of Chapter 11 of the United States Bankruptcy Code ("§ 1113") directly addresses a corporation's ability to reject or accept collective bargaining agreements through a bankruptcy proceeding. Section 1113(a) specifically states that a debtor in possession may assume or reject a collective bargaining agreement "only in accordance with the provisions of [§ 1113]." The remainder of § 1113 details the specific process a debtor in possession must complete in order to reject a collective bargaining agreement. The final provision of § 1113 states that nothing contained within the section "shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section." 11 U.S.C. § 1113(f).[6] The Sixth Circuit has previously relied upon § 1113 to find that existing contracts—such as collective bargaining agreements—cannot be unilaterally modified. *See, e.g., Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 443 (6th Cir. 2007) ("Even when an employer enters bankruptcy, the law 'prohibits the employer from *unilaterally* modifying *any provision* of the collective bargaining agreement.'") (internal citations omitted) (emphasis in original).

In the instant matter, all parties agree that TriStar did not try to reject the CBA. Instead, on June 8, 2012, TriStar filed a motion with the Bankruptcy Court to assume the CBA with Plaintiff. Despite TriStar explicitly assuming the CBA, both Defendants now argue that Plaintiff cannot claim TSFP is the "alter ego" of TriStar because TriStar indicated its intent not to assign the CBA to TSFP. TriStar claims this is the reason the Bankruptcy Court stated that TriStar sold its assets to TSFP "free and clear of all claims" via the bankruptcy. Defendants claim that Plaintiff needed to explicitly reserve the right to claim that TSFP is bound to the CBA as an

---

[6] Another circuit found the language of § 1113 to "indicate that Congress intended [§ 1113] to be the sole method by which a debtor could terminate or modify a collective bargaining agreement . . ." *See In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989–990 (2nd Circuit 1990). While not binding, the Court finds this assessment compelling and relevant for the case at hand.

9

"alter ego" of TriStar, and that, by failing to do so, Plaintiff lost its ability to bring such a claim now. Plaintiff asserts that courts have frequently applied the "alter ego" doctrine to bind a company established in the aftermath of a bankruptcy proceeding that was not itself brought before or relieved of any obligations by the bankruptcy court. Plaintiff further argues that bankruptcy law cannot provide a defense to an "alter ego" claim under federal labor laws.

The Court finds that stipulation by all parties involved as to TriStar's assumption of the CBA makes the required analysis for the instant matter relatively straight forward: as all parties agree the CBA applies to TriStar, the CBA will also apply to TSFP if it is found to be the "alter ego" of TriStar. Whether TriStar never "intended" to assign the CBA to TSFP is irrelevant; the Sixth Circuit and § 1113 clearly establish a single party cannot unilaterally terminate any provision of an existing collective bargaining agreement. Defendants' argument, however, seeks just that: if it were later found that TSFP is the "alter ego" of TriStar—and the Court had already decided TriStar's intention not to assign the CBA barred Plaintiff from bringing suit—TriStar will have successfully unilaterally terminated the CBA simply by "becoming" TSFP. In arguing that TSFP—regardless of whether or not it is an alter ego of TriStar—need not adhere to the terms of the CBA because TriStar sold its assets "free and clear" of all claims, Defendants completely miss the point of an "alter ego" analysis.

Additionally, the Court finds Defendants' contention as to what the Bankruptcy Court's Confirmation Order signifies materially false. Defendants' claim that Plaintiff cannot now raise an "alter ego" argument because the Confirmation Order designates that TSFP was getting TriStar's assets "free and clear" of all claims is directly opposed to the actual language contained in the Confirmation Order. The Confirmation Order specifically states that

> the Bankruptcy Court is making no ruling or finding as to whether applicable law precludes . . . [Plaintiff] from asserting, and they reserve the right to assert, any claims,

> rights or interests against [TSFP] or any other person or entity as a successor to the Debtor, however, to the maximum extent provided by law, [TSFP] or any other person or entity reserve the right to assert the assets are purchased under this order free and clear of any claims, rights or interests in such assets under the Plan.

This wording does not, as Defendants claim, indicate that TSFP *did* receive TriStar's assets free and clear of any claims; rather, this shows TSFP *reserves the right* to make such a claim. In a similar vein, this statement from the Confirmation Order clearly indicates the Bankruptcy Court explicitly *refused* to rule that Plaintiff did not have the right to assert any claim against TSFP. While TSFP argues this wording only provides Plaintiff with the ability to claim TSFP is a successor for bargaining purposes, the Court is not convinced. As established by both TSFP and Plaintiff, the "successorship doctrine" is very different than the "alter ego" doctrine. As this case deals only with the latter, any reference to the former is out of place.

As established above, the Court thus finds that Plaintiff is not barred by the Confirmation Order in TriStar's bankruptcy proceedings from now asserting that TSFP is the "alter ego" of TriStar. Additionally, TriStar's assumption of the CBA and intent not to assign the CBA to TSFP do not bar Plaintiff from bringing its current claim.

B. GENUINE ISSUES OF MATERIAL FACT EXIST CONCERNING TSFP'S "ALTER EGO" STATUS

As Plaintiff's "alter ego" claim is not prohibited by TriStar's bankruptcy, the Court next analyzes whether TSFP is the "alter ego" of TriStar. TriStar and TSFP are both moving for summary judgment on this point, claiming that TSFP is in no way the "alter ego" of TriStar. Defendants assert that the lack of any common ownership between the two companies and their different business structures indicates the transfer of assets was simply a "management buyout" by former TriStar officials. Defendants also argue that, if Plaintiff's "alter ego" argument prevails, future union contracts will become non-dischargeable for purchasers of a debtor's estate, thus forcing all similar future bankruptcy proceedings to lead to liquidation instead of a

sale of assets. Plaintiff argues that TSFP's continued use of TriStar's business name, telephone numbers, equipment and facilities—combined with the substantial similarity between TSFP and TriStar's management, customer base and employees—establishes that TSFP and TriStar are "alter egos" for purposes of federal labor law. Plaintiff additionally relies upon the allegedly favorable terms and lack of an arm's length transaction in TSFP's purchase of TriStar's assets as evidence of the "alter ego" status of each Defendant.

In determining whether two companies are "alter egos," a court must consider "whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership . . . ." *See Rd. Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO v. Dorn Sprinkler Co.*, 669 F.3d 790, 794 (6th Cir. 2012) (citing *NLRB v. Fullerton*, 910 F.2d 331, 336 (6th Cir.1990)). The Sixth Circuit has indicated that the "alter ego" doctrine was developed to prevent employers from evading obligations under federal labor laws and that a determination of a company's "alter ego" status is a question of fact. *N.L.R.B. v. Allcoast Transfer, Inc.*, 780 F.2d 576, 581 (6th Cir. 1986). The Sixth Circuit has also found that the "alter ego" analysis is a flexible one, where all relevant factors should be considered and no one element is required for a court to find "alter ego" status exists. *See Dorn Sprinkler Co.*, 669 F.3d at 794; *Allcoast Transfer, Inc.*, 780 F.2d at 579 (relying on finding from National Labor Relation Board that common ownership is but one factor to be considered). Additionally, the Sixth Circuit indicates that a "more relaxed, less exacting" application of the "alter ego" analysis applies in "order to effectuate federal labor policies." *Dorn Sprinkler Co.*, 669 F.3d at 794. The "essential inquiry under an alter ego analysis is whether there was a *bona fide* discontinuance and true change of ownership . . . or merely a disguised continuance of the old employer." *Allcoast Transfer, Inc.*, 780 F.2d at 581 (internal citations omitted).

Less than two years ago the Sixth Circuit reviewed the "alter ego" standard in a case the Court finds strikingly analogous to the instant matter. Indeed, in *Dorn Sprinkler Co.*, the Sixth Circuit considered a suit to compel arbitration under a collective bargaining agreement brought by a union—the very same union that is the Plaintiff in this case—where the union asserted a sprinkler fitting company was the alter ego of another sprinkler fitting company that became insolvent.[7] In *Dorn Sprinkler Co.*, the Sixth Circuit used each of the factors listed above to affirm the district court's ruling that Dorn Sprinkler and Dorn Fire Protection were not "alter egos" of one another. The Sixth Circuit, while indicating the two companies had the same business purpose and operated in the same marketplace, found no "alter ego" status due to:

1) a lack of substantially identical management between the two companies;
2) the lack of continuity of work force;[8]
3) a weakly related operation of business;[9]
4) the appearance of an arms-length purchase of assets;[10]
5) a differing customer base;[11] and
6) no evidence of any intent by either company to avoid the effect of a collective bargaining agreement.

*Id.* at 794-796.

Applying that same set of factors to the case at hand, the Court finds that all parties involved have raised a genuine issue of material fact as to whether TSFP is the "alter ego" of TriStar. The Court finds the instant matter dissimilar to *Dorn Sprinkler Co.* in several key ways: first, the continuity of work force (24 of TriStar's 25 employees at the time of its bankruptcy allegedly now work for TSFP) and overlapping customer base (60 of TriStar's 62 former

---

[7] The Court also finds striking that, in the hundreds of pages filed over two years of litigation, no party in this matter has ever relied or mentioned this analogous case. The Court cannot help but question the motives behind every party's apparent inability to see the similarities between this precedential case and the matter presently before the Court. More thorough and poignant filings in the future are advised.

[8] Only two of fourteen employees that worked for the out-of-business company—Dorn Sprinkler—worked for Dorn Fire Protection.

[9] Dorn Sprinkler and Dorn Fire Protection started as competitors.

[10] Dorn Fire Protection began its operations with all of its own tools. It then acquired only a limited number of tools from Dorn Sprinkler, while Dorn Sprinkler sold many tools to other contractors.

[11] Only nine of Dorn Sprinklers more than 250 customers were customers of Dorn Fire Protection.

13

customers are allegedly current customers of TSFP) are significantly different than the situation in *Dorn Sprinklers Co*. Additionally, Plaintiff has presented credible evidence as to whether the Agreement between TriStar and TSFP—due to both the overlap in company management created with Wieber and Hermanson, along with the allegedly favorable terms of purchasing TriStar's asserts by TSFP—was an arm's length transaction. Notably, Defendants point out a lack of any intent by TriStar in filing bankruptcy to avoid the terms of the CBA and present evidence that there has never been any common ownership between TriStar and TSFP.

The Court finds that the evidence and arguments presented by Plaintiff and both Defendants create genuine issues of material fact as to whether TSFP is the "alter ego" of TriStar. The Court further finds that all parties have presented evidence with regards to the "alter ego" issue that a jury could reasonably rely upon in coming to its conclusion. As such, the Court cannot grant any of the parties' motions for summary judgment with regards to the "alter ego" question; such an issue is a question of fact for a jury to decide.

## V. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that the motion from Defendant TSFP Holdings, Inc. for leave to file a supplement to its motion for summary judgment [dkt 28] is GRANTED.

IT IS FURTHER ORDERED that all motions for summary judgment [dkt 20–22] are DENIED.

IT IS SO ORDERED.

Dated: February 24, 2014

s/Lawrence P. Zatkoff
HON. LAWRENCE P. ZATKOFF
U.S. DISTRICT COURT